UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHERINE NORTON                                    CIVIL ACTION

VERSUS                                              NO. 19-9307

ANDREW SAUL, COMMISSIONER                           SECTION "F" (2)
OF SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Plaintiff Catherine Norton seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), granting plaintiff's claim for a period of

disability and disability insurance benefits under Title II of the Act. 42 U.S.C. § 1382c. The

matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

Local Rule 73.2E(B).

I.      PROCEDURAL HISTORY

On December 13, 2017, Norton filed a Title II application for a period of disability and

disability insurance benefits, alleging a disability onset date of April 1, 2016. (Tr. 159–65).

After her claim was denied at the agency level, plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on November 15, 2018, in New Orleans,

Louisiana. (Tr. 98–101, 117). Plaintiff appeared at the hearing in person and was represented

by counsel. (Tr. 38). On November 5, 2018, in advance of the hearing, plaintiff's counsel

submitted into the record a case summary and exhibits in support of a motion to amend

plaintiff's alleged disability onset date to August 17, 2016. (Tr. 265–78). Plaintiff's case

summary outlines three alleged unsuccessful work attempts by plaintiff in 2017, supported by citations to record evidence. Id.

The ALJ issued a decision on December 19, 2018, finding that Norton was not disabled before January 1, 2018, but became disabled on that date and continued to be disabled through the date of decision, with a disability expected to last twelve months past the onset date. (Tr. 24–32). The ALJ rejected plaintiff's alleged disability onset date of August 17, 2016, reasoning that before January 1, 2018, Norton engaged in substantial gainful activity throughout 2017 as a mortgage underwriter for three separate companies. (Tr. 24, 26). In reaching this finding, the ALJ also rejected plaintiff's assertion that these 2017 work stints were "unsuccessful work attempts" under 20 C.F.R. § 404.1574. (Tr. 24). The ALJ reasoned that the 2017 work stints were not unsuccessful work attempts because "these were generally the same jobs involving the same duties and were performed in the same industry." Id.

On January 11, 2019, Norton requested review of the ALJ's decision. (Tr. 150–52). The Appeals Council denied plaintiff's request on March 7, 2019, finding no basis to overrule the decision, and the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1–3).

Plaintiff filed her complaint in this court on April 11, 2019. Record Doc. No. 1. Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 10, plaintiff filed a motion for summary judgment. Record Doc. No. 13. The court treats her summary judgment motion as a memorandum of facts and law regarding her instant appeal from the Commissioner's final decision. Defendant timely filed a reply memorandum of facts and law

on December 31, 2019. Record Doc. No. 15. At plaintiff's request, oral argument was conducted on January 29, 2020. Record Doc. Nos. 16–17, 20.

In her single assignment of error, plaintiff contends that the ALJ did not apply proper analysis under 20 C.F.R. § 404.1574 in assessing whether plaintiff's three work stints in 2017 were "unsuccessful work attempts." Record Doc. No. 13-2 at p. 3. Plaintiff argues that the ALJ's decision should be vacated in part and remanded to the ALJ for proper analysis of plaintiff's 2017 work. Id. at p. 6. Plaintiff contends that the ALJ's failure to conduct the proper analysis potentially cost her up to 16 months of benefits eligibility. Id. Defendant's opposition memorandum argues that the Commissioner's decision is supported by substantial evidence because "[t]he record is void of any evidence that would show that work stoppage was due to Plaintiff's impairments." Record Doc. No. 15 at p. 5.

II.    STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the Commissioner made the following error:

A.    The ALJ did not properly apply the regulatory analysis required under 20 C.F.R. § 404.1574 in reaching her finding that plaintiff's three work stints in 2017 were substantial gainful activity rather than one or more unsuccessful work attempts.

Record Doc. No. 13-2 at p. 3.

III.    ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1.    Norton meets the insured status requirements of the Act through December 31, 2022.

3

2.    Norton was not disabled before January 1, 2018, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision, with the disability expected to last twelve months past her disability onset date.

3.    Before January 1, 2018, plaintiff engaged in substantial gainful activity.

4.    Plaintiff's three work stints as a mortgage underwriter in 2017 were not unsuccessful work attempts because these were generally the same jobs involving the same duties and were performed in the same industry as her past employment.

5.    Beginning on January 1, 2018, plaintiff has not engaged in substantial gainful activity.

(Tr. 24–32).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363–64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence

4

weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332–33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for a period of disability and disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining

disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

Claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to her former employment, then the claimant's age, education, and work experience are considered to see whether she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00–204.00, 416.969 ("Medical-Vocational Guidelines").

engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. <u>Alexander</u>, 412 F. App'x 720–21; <u>Perez</u>, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" <u>Chrisner v. Astrue</u>, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991)); <u>accord</u> <u>Perez</u>, 415 F.3d at 463.

B.    <u>Plaintiff's ALJ Hearing Testimony</u>

At the ALJ hearing, Norton testified she is 60 years old, right-handed, five feet ten inches tall and weighs 130 pounds. (Tr. 41). She stated that she is divorced and has no minor children. <u>Id</u>. Plaintiff said that she does not currently have a driver's license, but did have one in the past. (Tr. 41–42). She testified that the reason she no longer has a driver's license is that the State told her she owes taxes. (Tr. 42). She stated that her sister drove her to the ALJ hearing. <u>Id</u>. Norton testified that she completed the tenth grade and earned her General Education Diploma ("GED"). <u>Id</u>. She stated that she completed some college courses but did not receive any degrees. <u>Id</u>. Plaintiff said she knows how to read and perform basic math. <u>Id</u>.

Plaintiff stated that she worked as a senior mortgage underwriter for Wholesale Capital Corporation, Home Mortgage Alliance Corporation, Security National Mortgage Company, Amlease Corporation, Evolve Bank & Trust, Flagstar Bank, Aerotek and Eureka Homestead. (Tr. 43–44, 46). She said that she was a supervisor at Eureka Homestead in 2006 and 2007,

where she was responsible for ten people and had the power to hire, fire and discipline employees. (Tr. 46–47). She testified that the last time she worked was October 5, 2017, at Security National Mortgage Company. (Tr. 46).

Plaintiff stated that her duties as a mortgage underwriter were to analyze loans and determine if these loans met government guidelines. (Tr. 47). She said that her jobs required lots of typing out of conditions for the mortgages she reviewed. Id. She said that she used a computer, typewriter and telephone in her various underwriter positions. Id.

Norton testified that she is unable to type with her right, dominant hand. (Tr. 48). She stated that she had surgery on her right hand in April 2018. Id. Plaintiff said that an appliance was placed into her wrist and arm. Id.

Plaintiff stated that she can dress with assistance and bathe without assistance. (Tr. 49). She said that she is unable to button, zip or pull clothes over her head by herself. Id. Norton stated that she does not perform household chores or yardwork. Id. She said she does not use a cane, walker or wheelchair. Id. Plaintiff testified that she has no problems sitting in a chair. Id. She said that she uses a recliner and can sit for an hour without needing to stand. Id. Norton testified that she can stand for up to 40 minutes before needing to sit. Id. Plaintiff said that she can walk about 40 feet from her house before needing to stop. (Tr. 50). She stated that she cannot lift anything with her right hand, but can hold a ten-pound purse with her left hand. Id. She said that she struggles to feed herself with utensils. Id.

Plaintiff testified that her ulna bone is deteriorating due to an accident in which she fractured her wrist. (Tr. 50, 53). She stated that she was diagnosed by her doctors with a

fractured wrist, anemia, iron deficiency and hardening of the arteries. (Tr. 51). Norton stated that she takes medication, which helps "to a degree." Id. She testified that her doctors told her she needed to see a pain management specialist. Id. Norton said that she can only take her Gabapentin medication when she goes to bed because otherwise she would fall down. (Tr. 51–52).

Norton testified that on a typical day she wakes up and spends about 20 minutes getting out of bed and putting on her brace. (Tr. 52). She said that after she gets up she takes a shower and brushes her teeth. Id. Norton stated that she uses a shower chair. Id. She testified that she then goes into her living room to sit on her recliner and watch television or meditate. Id. She said that sometimes she sits on her porch and enjoys the sunshine. Id.

Norton stated that she does not visit any type of mental health therapist or psychiatrist. Id. She testified that she takes an anti-depressant medication to treat her depression, which was prescribed to her by Dr. Mansfield, her primary care physician. (Tr. 52–53).

Plaintiff stated that she fractured her wrist in August 2016, while she was working for Evolve Bank & Trust. (Tr. 53). She testified that she called her employer to explain the injury and subsequently was fired from the job. Id. She said that her wrist did not heal easily and that she visited an orthopedist, who set the wrist and placed her in a cast but advised her that she did not need surgery. (Tr. 54). Norton testified that her wrist never healed, but began to swell. Id. She stated that the fingers in her hand began to "constrict" and her doctors described the phenomenon as a "contracture." Id. Norton testified that her fingers began to constrict/contract

shortly after the August 2016 accident. Id. She said that she has not been able to use her hand while working since the accident. Id.

Norton testified that she was hired by Wholesale Capital on February 22, 2017. Id. She stated that she was fired 41 days later because her swollen hand and ability to only type with one finger rendered her unable to perform her job duties. (Tr. 54–55). Plaintiff testified that she was hired by American Residential on May 20, 2017. (Tr. 55). She stated that this job only lasted two weeks because she "could not keep up the pace." Id. Norton said that she was hired by Security National in September 2017 and was fired on October 5, 2017, because she once again "could not keep the pace." (Tr. 55–56).

Plaintiff testified that she has no functional use of her right hand except for a single finger, which sometimes gives her trouble. (Tr. 56). She stated that she has "no sensation" and that when she attempted to pick up a pen, "it just falls." Id. She said that she cannot write a clear sentence with a pen and cannot pick up coins. (Tr. 56–57). Norton said she has "constant" pain in her hand, and the pain severity was an eight to a ten on a scale of one through ten. (Tr. 57). Plaintiff stated that the pain interfered with her performance in her attempts to work. Id. She said that the pain level "stops [her] brain from functioning." Id.

Plaintiff testified that the pain affects her ability to do normal daily activities such as reading, because she is unable to concentrate. Id. Plaintiff testified that her daughter's disability support providers assist her with dressing and cooking food. (Tr. 58). Plaintiff said that she is not able to cook. Id. She further stated that she attempts to go grocery shopping by herself, but requires assistance from others. Id.

Norton testified that the pain in her hand limits her social life in that she is unable to drive or leave the house. (Tr. 59). She stated that she goes to family functions with her sisters, but needs to be driven by them. Id. She said that her depression is a result of her hand injury and the failure to maintain her former status as "breadwinner" of her family. Id. She stated that the injury has "altered" her life. Id.

Plaintiff testified that her doctors cannot operate until her bone regenerates and that the doctors want to perform a bone graft on her arm to stabilize it. (Tr. 60). She stated that the doctors think her arm can be stabilized, but that there is nothing that can be done to help her fingers. (Tr. 61).

C.    Vocational Expert Testimony

A vocational expert, Katrina Virden, testified at the hearing. Id. She stated that plaintiff worked as an mortgage underwriter for residential home buyers. (Tr. 62). She said that a mortgage underwriter performs sedentary, skilled work. Id. Virden testified that plaintiff also worked as an underwriting supervisor, which consists of light, skilled work. Id.

The ALJ posed a hypothetical of a right-hand dominant individual who could occasionally lift and carry ten pounds; frequently lift and carry less than ten pounds; stand, sit and/or walk for six hours out of an eight-hour work day, with a right upper extremity that can be used in a helper fashion to the weight already given on the left upper extremity; who was occasionally limited in handling, fingering, feeling and reaching in the right upper extremity; can never climb ladders, ropes or scaffolds; and can only occasionally crawl. (Tr.

63). Virden testified that such an individual could perform less than a full range of sedentary work and none of plaintiff's past relevant work. (Tr. 63–64).

D.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the evidence. (Tr. 26–32). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    <u>Plaintiff's Appeal</u>

<u>1. The ALJ's assessment of plaintiff's 2017 work did not address any of the required considerations for determining whether the work consisted of one or more unsuccessful work attempts, despite the availability of ample medical, employment and testimonial evidence in the record to do so.</u>

As stated above, to be considered disabled and eligible for a period of disability and disability insurance benefits, a Social Security claimant must show that she is unable to engage in any substantial gainful activity by reason of her physical or mental impairment(s). 42 U.S.C. § 423(d)(1)(A). The Commissioner's primary consideration in evaluating work activity for substantial gainful activity purposes is the amount of earnings a claimant derives from the work activity. 20 C.F.R. § 404.1574(a)(1). However, a Social Security claimant's earnings from an "unsuccessful work attempt . . . **will not show that [she is] able to do substantial gainful activity**." <u>Id</u>. (emphasis added). The Commissioner will consider a work attempt to be unsuccessful if (1) the claimant was out of work at least 30 consecutive days before the work attempt; (2) the work attempt lasted six months or less; and (3) the claimant

stopped working or reduced her workload and earnings below the substantial gainful activity earnings level because of her impairment. 20 C.F.R. § 404.1574(c).

Plaintiff's medical records establish that she suffered a distal radius fracture of her right wrist after falling off her porch steps on August 16, 2016. (Tr. 288, 294, 490, 626). Norton's written submissions allege a disability onset date of August 17, 2016, and outline three alleged unsuccessful work attempts by plaintiff in 2017 following the accident. (Tr. 265–78).

Norton testified at the ALJ hearing that after her accident, she informed her then-employer Evolve Bank & Trust about her wrist injury and subsequently was fired from her position as a senior mortgage underwriter. (Tr. 53). Plaintiff stated that her duties as an underwriter were to analyze loans and determine if these loans met government guidelines. (Tr. 47). She said that the position requires lots of typing out of conditions for the mortgages she reviews. Id. Norton stated that she used a computer, typewriter and telephone in her daily work. Id. She testified that her injuries rendered her unable to type with her right, dominant hand. (Tr. 48).

Plaintiff visited Dr. Melvin Parnell at Crescent City Orthopedics on August 17, 2016, for treatment for her wrist injuries and placement of a cast. (Tr. 265, 286–90, 294). She was treated by Drs. Parnell and John Cazale, IV in October and November 2016, who observed mild limitation of motion of plaintiff's right wrist and fingers, stiffness in her right hand and delayed healing at the site of the fracture. (Tr. 620–27). Plaintiff visited Dr. Charles T. Clasen on November 3, 2016, who observed that plaintiff had edema through the right wrist and some edema to the right hand, limited range of motion in the right wrist, and complained of

13

significant pain upon movement of her right fingers. (Tr. 490). Dr. Clasen concluded that plaintiff's injuries were "grossly under rehabilitated" and recommended "aggressive hand therapy" and discontinuation of all mobilization. (Tr. 491). Plaintiff attended physical and/or occupational therapy at Hand Surgical Associates from October 31 through November 18, 2016. (Tr. 628–31). Notes from her therapy appointments state that plaintiff initially experienced significant pain when extending her wrist and performing range of motion exercises, but eventually experienced a decline in pain and increased range of motion tolerance. Id.

Plaintiff's first alleged unsuccessful work attempt was a senior mortgage underwriter position with Wholesale Capital Corporation, which she began on February 22, 2017. (Tr. 177, 270–71). Plaintiff was fired from the job on April 4, 2017, based on "inconsistency in conditioning loans, and failure to satisfactorily meet the underwriting production expectations." (Tr. 272). Norton testified that she was fired because of her swollen hand and inability to perform her job duties based on the fact that she could only type with one finger. (Tr. 54–55).

Plaintiff visited Dr. Brandon P. Donnelly at Pontchartrain Orthopedics on April 21, 2017, complaining of pain and stiffness to the right hand, inability to straighten her fingers, decreased sensation with numbness and tingling to the entire right hand, and weakness and difficulty grabbing and using the right hand. (Tr. 297). Upon physical examination, Dr. Donnelly found that plaintiff had deformity to the wrist consistent with malunion of the distal radius with prominence of the ulna, limited range of motion of the wrist, marked pain

diffusely about the wrist, crepitus, contractures to the right hand and fingers and inability to move her right fingers to the palm. (Tr. 297, 299). Dr. Donnelly recommended additional therapy to work on extension of plaintiff's joints and range of motion in the fingers. (Tr. 299).

Plaintiff's second alleged unsuccessful work attempt was a senior mortgage underwriter position with American Residential Lending, which she began on May 30, 2017, before she was terminated on June 9, 2017. (Tr. 274–76). Plaintiff testified that she was terminated because she "could not keep up the pace" required for the job. (Tr. 55).

Plaintiff's third and final alleged unsuccessful work attempt was an underwriter position with Security National Mortgage Company that began on September 5, 2017, and ended on October 5, 2017, when she was fired. (Tr. 55–56, 180, 280). Plaintiff testified that she was fired because she "could not keep the pace" required for the job and further stated in a disability report that she stopped working there "[b]ecause of my condition(s)." (Tr. 55–56, 180).

On November 7, 2017, plaintiff visited Dr. Laura Mansfield at the Family Practice Center complaining of headaches, weakness, anxiety, lack of sleep and appetite, depression and ankle pain. (Tr. 371). Upon physical examination, Dr. Mansfield found that plaintiff had deformity in the right hand and wrist; contractures of the right wrist; tenderness, pain and edema in the left ankle; and a depressed, flat mood. (Tr. 371, 373). Plaintiff was admitted to East Jefferson General Hospital for iron deficiency anemia on November 18, 2017. (Tr. 393). An ultrasound of plaintiff's left ankle revealed very severe stenosis involving the left anterior tibial artery. (Tr. 395, 448).

After review of the record evidence and testimony summarized above, the ALJ found that plaintiff "engaged in substantial gainful activity throughout the year 2017" and concluded that plaintiff's three employment stints in 2017 were not unsuccessful work attempts. (Tr. 24). As sole support for her conclusion, the ALJ cited plaintiff's hearing testimony that her 2017 jobs "were generally the same jobs involving the same duties and were performed in the same industry." Id.

The ALJ's foregoing conclusion based on the quoted finding was erroneous as a matter of law and contrary to substantial evidence that Norton's work attempts were unsuccessful because of her impairment. The type of work and duties a Social Security claimant performs **are not relevant to the unsuccessful work attempt analysis**. The three factors the ALJ must consider are whether (1) the claimant was out of work at least 30 consecutive days before the work attempt; (2) the work attempt lasted six months or less; and (3) the claimant stopped working or reduced her workload and earnings below the substantial gainful activity earnings level because of her impairment. 20 C.F.R. § 404.1574(c). As summarized above, the record evidence and plaintiff's testimony provided the ALJ with more than enough information to assess the three factors, yet she did not address a single one. Thus, for the foregoing reasons, the ALJ's decision should be vacated in part and remanded for proper analysis of plaintiff's 2017 work under 20 C.F.R. § 404.1574.

<u>CONCLUSION</u>

The ALJ did not apply the appropriate legal standard under 20 C.F.R. § 404.1574 in reaching her conclusion that plaintiff's three work stints in 2017 were substantial gainful

16

activity rather than one or more unsuccessful work attempts, despite the availability of ample medical, employment and testimonial evidence in the record to do so.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that ALJ's decision should be **VACATED IN PART** as to the ALJ's finding regarding plaintiff's 2017 work and **REMANDED** for proper analysis of plaintiff's 2017 work under 20 C.F.R. § 404.1574.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____4th____ day of February, 2020.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.

17